## McKERCHEY *v.* McILVENNA.

1. SALES—DAMAGES—SPECIAL CONTRACT.
  In an action for goods sold and delivered, testimony showing
  that the plaintiff stated he would sell to the defendant as
  cheap as any other dealer, does not support the claim that a
  special contract to charge the market price was made by the
  parties.

2. APPEAL AND ERROR — SAVING QUESTIONS FOR REVIEW — EVI-
  DENCE—WITNESSES.
  On recoupment for insufficiency of the quantity and quality of
  the goods delivered, complaints of the defendant made to a
  deceased agent of plaintiff are competent, but the exclusion
  of such evidence is not reviewable unless exception is taken
  to rulings on questions which were admissible and error
  affirmatively appears.

3. SAME—BRIEFS—SAVING QUESTIONS FOR REVIEW.
  Comment on the court's charge in appellant's brief to the effect
  that it was prejudicial and not based on the testimony is too
  general to permit a review.

Error to Wayne; Donovan, J. Submitted February
15, 1910. ( Docket No. 166.) Decided April 1, 1910.

Assumpsit by John M. McKerchey against Robert Mc-
Ilvenna for goods sold and delivered. A judgment for
plaintiff is reviewed by defendant on writ of error. Af-
firmed.

*Harry L. Schellenberg*, for appellant.

*Philip A. McHugh* and *William Henry Gallagher*
for appellee.

OSTRANDER, J. Plaintiff sued defendant to recover
$131.46, claimed to be a balance due him upon an open ac-
count for goods sold and delivered. Defendant pleaded
the general issue and gave notice of a set-off and recoup-
ment, claiming a credit of $127.14. Plaintiff sells build-

ers' supplies. Defendant is a sidewalk builder. Their dealings, it is admitted, began in June, 1905, and ended in August, 1907, during which period plaintiff sold to defendant goods of the value of $2,224.92; the credits amounting to $2,093.46. Bills accompanied each delivery of goods, and invoices showing quantities and prices were rendered each week. Defendant complained to plaintiff of nothing—neither quantity, quality, nor price of goods—until after this suit was begun.

It is the contention of defendant that plaintiff agreed to sell him goods at the market price, as cheap as any one else and probably a little better, that he never examined his bills carefully and never made inquiry concerning the market price of the material delivered. He offered to prove the market price, and the testimony was excluded. Himself a witness, the defendant gave testimony to the effect that his business was sometimes solicited by plaintiff's agent. The following occurred:

"*Q.* Did he (the agent) make any representations to you as to the price of material?

"*A.* No, sir; I do not think he did. (Objected to unless the agent's name is disclosed.)

"*A.* Mr. Radloff, I think he is dead now.

"*Q.* What did he disclose to you? (Objected to as incompetent and immaterial.)

"*The Court:* I think the objection is good. The opposite party, if called, shall not be permitted to testify at all, and he is the opposite party, and he is called as a witness.

"*Mr. Schellenberg:* That is, as between the parties to the litigation.

"*The Court:* No, sir; not at all. The opposite party, and the law is to let people meet on an equality, and, where the opposite party is called to put in testimony that could have been denied if the living party was here, he is prohibited from testifying at all. That will apply right here, because it is the opposite party.

"*Mr. Schellenberg:* I take an exception."

Defendant further testified:

" His agreement to sell me the materials at the same price as others were selling to me or at better was what

induced me to deal with him principally, not entirely, but I would say partly. I am not capable of figuring out the items in my set-off. I never made inquiry as to the market price during the running of this account. I received some bills from McKerchey right along, but never examined them thoroughly. I relied entirely upon McKerchey's honesty. I mean by this, I relied upon him to give me the market price."

On cross-examination the defendant further testified:

"McKerchey said he could give me goods as cheap or probably cheaper than others. His place was convenient to my place, and I went on and did business with him. The conveniency of his place was some consideration for my entering into business with him. I made payments to him with considerable regularity; sometimes twice a month. I do not remember that I made any complaint as to quality or quantity of the goods delivered at the time when I made the payments. I made a protest and complaints. I complained once about a load of sand to Mr. Wilcox, and he told me that Mr. McKerchey would look for pay for that sand from me. After this complaint I made steady payments.

"Q. When did you first object to the payment of this bill, on account of shortage, or upon any other ground?

"A. When we were about to come to a final settlement, I asked for a bill of particulars.

"Q. You bought from Mr. McKerchey?

"A. Yes, sir.

"Q. And it is a fact bills were rendered to you?

"A. Through my lawyer.

"Q. Before you went to your lawyer, what complaint, if any, did you make about the payment of this bill?

"A. I do not know I made any.

"Q. So that until you retained Schellenberg you were entirely satisfied with this bill?

"A. No, I cannot answer that question.

"Q. You made no complaint about it, did you?

"A. About the account?

"Q. Yes, sir.

"A. No, I do not think I did."

Being recalled, defendant further testified:

"Q. In your examination, as the defendant in this cause, you stated your conversation with Mr. McKerchey,

before you started to deal with him, and I believe it is claimed you stated that he could sell you material as low as the other dealers, in the business, did you say that?

"*A.* He said he would sell me as cheap as any other dealer.

"*Q.* And did you upon those representations deal with Mr. McKerchey?   *   *   *

"*A.* Yes, sir."

Defendant introduced testimony tending to prove that his employé had on one or more occasions refused to sign the driver's receipts or checks for sand delivered to defendant because the loads were short, and that he reported the shortage to a deceased agent of plaintiff. The testimony concerning the report to the agent was stricken out. It developed that the total of the shortages was probably a load and a half, probably more. The jury returned a verdict for plaintiff, upon which judgment was entered.

1. There is no testimony tending to prove that the sales were made under a special contract that the prices charged should be the market prices.

2. The testimony of complaints to the deceased agent of the plaintiff concerning the quantity of goods delivered was clearly competent; but we do not find the point raised by exceptions. The answer to the question, "What did he (the agent) disclose to you?" may or may not have been admissible, depending upon facts and circumstances not disclosed. It does not appear affirmatively that error was committed in excluding whatever answer the witness would have made.

3. As to the charge of the court, it is said in the brief for appellant that "It was prejudicial to the rights of defendant and not based on the testimony in the case." No further comment upon the charge is made. The practice does not permit us to review the charge in a search for possible errors.

The judgment is affirmed.

HOOKER, MOORE, MCALVAY, and BROOKE, JJ., concurred.